## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 1:23-cr-00144** |
| | : | |
| **v.** | : | |
| | : | **Hon. Ana C. Reyes** |
| **JOSHUA ABATE,** | : | |
| | : | |
| Defendant. | : | **Sentencing Date:   September 13, 2023** |
| | : | |

### DEFENDANT'S POSITION ON SENTENCING FACTORS

The Defendant, JOSHUA ABATE (hereinafter, "Abate"), through counsel, states she has received and reviewed the Pre-Sentence Investigation Report ("PSR") prepared in this case and respectfully submits this sentencing memorandum in connection with the aforementioned case. Abate, after due consideration of all the sentencing factors, including the recommendation by probation, is requesting a sentence of 6 months of supervised probation and to pay restitution in the amount of $500.00.

### I.      INTRODUCTION

The events that unfolded on January 6, 2021, have undeniably left an indelible mark on recent American history, provoking extensive debate and discussion across the political spectrum. These events have spurred questions about the nature of the gathering, the motivations of those in attendance, the response of law enforcement, and the profound implications for the democratic process in the United States.

In the midst of this controversy, Abate, a 20-year-old United States Marine Corporal, found himself participating in these tumultuous events. As a result, acknowledging that his actions on that day contributed to what the Government characterizes as a violent attack that disrupted Congress's certification of the 2020 Electoral College vote count, posed a threat to the

1

peaceful transfer of power following the 2020 Presidential election, caused injuries to over a hundred police officers, and resulted in more than $2.9 million in losses, Abate pleaded guilty to a single count of violating 40 USC § 5104(e)(2)(G).

Abate now stands before this honorable court, fully aware of the consequences he faces for not only attending but actively participating in the breach of the Capitol—albeit by merely walking around for 52 minutes and being part of an unlawful demonstration. Abate unequivocally acknowledges that no excuse or explanation can justify his presence at the Capitol on that fateful day. He recognizes the gravity of his actions and takes complete responsibility for them.

Abate humbly implores this court to determine his sentence judiciously, considering his background and character as integral factors in determining an appropriate punishment. In this regard, the Court may ponder how this model Marine, devoted husband, loving father, son, and brother—undoubtedly a genuinely good person—found himself at the Capitol on January 6, 2021. In assessing his background, Abate hopes the Court will discern that this was a youthful indiscretion committed during a period of profound societal upheaval. It is essential to note that Abate has expressed genuine remorse, as attested by Exhibits C-1 & D-1. He disclosed his involvement on January 6, 2021, to NCIS investigators during a routine security clearance investigation, with no knowledge of any ongoing criminal investigation, fully understanding that his admission could lead to criminal prosecution. Furthermore, he cooperated fully and debriefed with the FBI upon his arrest, irrespective of the potential consequences.

The integrity, courage, and commitment that Abate displayed in the aftermath of these events are meticulously detailed in the materials submitted to the Court (Exhibits A-1 through F-1). In light of his exemplary post-incident conduct and expression of remorse, Abate

respectfully requests that this Court consider sentencing him, in accordance with the recommendation of probation, to a period of six months of supervised probation, along with any special conditions the Court deems appropriate and, as stipulated in the plea agreement, including the agreed-upon $500.00 restitution.

## II.      Factual and Procedural Background

Abate acknowledges and aligns with the factual and procedural background outlined in the Government's Position on Sentencing. One notable correction, raised by Counsel for Abate, pertains to the circumstances of his arrest. It is essential to clarify that Abate was arrested at the Criminal Investigation Division on Fort Meade, Maryland, and his arrival at this location was facilitated by Master Gunnery Sergeant Chris Tomason. Subsequently, Abate was detained by FBI Agents and cooperated fully during interviews and throughout his period of detention.

In terms of Abate's admissions during the investigation, it is imperative to note that a comprehensive examination of the information contained in the reports provided by the Government does not indicate that Abate admitted to chanting phrases such as "stop the steal" or "four more years." However, Abate did acknowledge to picking up a sign and a piece of wood that were on the floor upon entering the Capitol. Additionally, he informed FBI and NCIS agents that he was in close proximity to tear gas. Moreover, Abate admitted that he and his fellow Marines placed Cpl. Coomer's hat on a statue and photographed it.

This clarification serves to provide an accurate and detailed account of Abate's admissions during the investigation, ensuring a precise understanding of his involvement in the events surrounding January 6.

## III.      Statutory Penalties

Abate adopts the and agrees with the Governments statement of Statutory Penalties as

outlined in the Government's Position on Sentencing

**IV.   Legal Standard for Sentencing and Argument**

Sentencing is guided by 18 U.S.C § 3553(a) which outlines specific factors the Court must consider in formulating a sentence to include:   (1) the nature and circumstances of the offense, §3553(a)(1); (2) the history and characteristics of the Defendant, *id;* (3) the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have found guilty of similar conduct. § 3553(a)(6).   In this case, the Court will see that, consistent with probation's recommendation, a sentence of six months on probation and the payment of $500 in restitution is appropriate when weighing these factors. In the alternative, if the Court does deem that incarceration is appropriate, Abate requests that he be sentenced to period of home confinement for a period not to exceed 60 days or to perform additional community service hours then those previously completed.

A.   The Nature and Circumstances of the Offense

As underscored by the Government, the assault on the U.S. Capitol on January 6th was described as an alarming threat to our democracy. Accountability for those who engaged in violent and destructive behavior has resulted in additional and more serious offenses being charged. We concur that the absence of these elements should not be considered a mitigating factor, but it is a pertinent distinguishing characteristic for this Court's consideration when determining an appropriate sentence for Abate.

Throughout the events at the Capitol, Abate was present for a brief period, less than an hour. During this time, he recalls picking up items, including a piece of wood and a sign, from

the ground. He found himself in close proximity to tear gas and, with regret, participated in placing Cpl. Coomer's hat on a statue in the rotunda, capturing it in a photograph.

Importantly, it should be noted that Abate did not actively participate in or incite the rioters through direct actions or statements. While the Government alleges that he admitted to chanting in protest, it is vital to clarify that the undersigned could not locate these specific facts in the provided discovery materials. Furthermore, this statement is conspicuously absent from the statement of facts signed by Mr. Abate as part of his plea agreement.

Abate has demonstrated profound remorse for his involvement in this situation, as evidenced by his personal letter to the Court and the creation of an objective research paper (Exhibits C-1 and D-1). This research paper was crafted to illustrate to the Court that he acted based on misinformation and has since undertaken efforts to educate himself about the facts surrounding the 2020 U.S. Presidential Election. It is noteworthy that the Government's broad characterization of Abate as sharing Cpl. Coomer's anticipation of future violence is not grounded in fact. Mr. Abate never endorsed or propagated Cpl. Coomer's sentiments on social media, and no evidence suggests that he shared such views. In reality, he has felt a deep sense of disgrace from the moment he departed the Capitol, and his involvement has weighed heavily on his conscience.

  B.  <u>History and Characteristics of the Defendant</u>

Abate, a 22-year-old husband and devoted new father to a baby girl, respectfully stands before this Court, with a sincere request for probation. It's essential to consider Abate's circumstances as the compelling reasons why probation is a fitting and just resolution for his case. As clarification from in the Government's position on sentencing, Abate is facing pending separation proceedings from the U.S. Marine Corps and the looming prospect of a security

clearance revocation. The uncertainty of these proceedings, with no set dates for his separation hearings and a deadline of October 18 to respond to the Government's revocation of his security clearance, adds an immense burden to his already challenging situation.   Upon his arrest, Abate was removed from his internship at the NSA and assigned to perform administrative duties pending resolution of this matter, his separation proceedings, and the revocation of his security clearance.

Abate's background and character further underscore the suitability of probation. Born into a family deeply rooted in public service, his father's career in law enforcement and the U.S. Marine Corps, along with his mother's service in the Navy and her work as a registered nurse, instilled in him a strong sense of responsibility from a young age. He took on the role of caregiver for his younger brother, Jackson, due to his parents' demanding shift work, forging a close and nurturing bond with him.

Throughout high school, Abate demonstrated a profound affinity for military service, much like his father and older brother. He excelled in the ROTC program, showcasing his commitment to service and leadership. Even with his responsibilities and personal goals, Abate consistently supported Jackson by picking him up from school, assisting with homework, and preparing meals.

After graduating from high school, Abate wasted no time in enlisting in the U.S. Marine Corps, where he thrived and consistently demonstrated exemplary conduct. His record is a testament to his dedication, including serving as a Signals Intelligence (SIGINT) and Electronic Warfare (EW) Operator/Analyst, with additional military occupational specialties as a Primary Marksmanship Instructor. Abate's accomplishments include holding a black belt in the Navy and Marine Corps Martial Arts Program and achieving an associate degree from American Military

University with an impressive 3.45 GPA. He was meritoriously promoted to Sergeant six months before he was eligible, a testament to his exceptional leadership abilities. Abate's achievements also extend to receiving a Navy and Marine Corps Commendation Medal, a rare honor for someone below the rank of Staff Non-Commissioned Officer.

Beyond his military career, Abate is consistently described in 53 heartfelt letters as a compassionate and selfless individual who routinely goes above and beyond to assist others. He has earned a reputation for making sound decisions, caring deeply for his family and friends, and being a dependable and reliable presence in their lives. It is essential to note that aside from minor traffic infractions, Abate has maintained a clean and unblemished criminal record.

Considering Abate's dedication to his family, his outstanding military service, and his positive impact on the community, probation is the appropriate path forward. It would enable him to continue contributing to society, supporting his young family, and demonstrating his commitment to rehabilitation and personal growth. In this case, probation aligns with both the principles of justice and the potential for redemption, emphasizing a balanced and equitable approach to sentencing.

C.  The need for the sentence to reflect the seriousness of the offense and promote respect for the law

While it is near impossible to argue that the events of January 6, 2021 were not serious regardless of the offense level, the need for the sentence to reflect the seriousness of the offense also favors deviation from the recommendation for incarceration as indicated in the government's position.   It's important to note that not all participants, including Abate, were engaged in acts of violence, destruction, or sedition. In some cases, like Abate's, individuals found themselves unwittingly caught up in the chaos, their actions driven more by curiosity or misperception than by an intent to undermine democracy. In such instances, probation serves as a

measured response that aligns with the principle of proportionality in sentencing.

For an individual like Abate, who was 20 years old at the time of the offense, probation can address the unique circumstances of his case and provide an opportunity for rehabilitation. In cases similar to Abates, where the defendant did not actively engage in acts of violence or sedition, probation serves as an alternative to incarceration while still holding the individual accountable for their actions. By imposing probation, this Court can require Abate to fulfill specific conditions, such as additional community service and educational programs, aimed at fostering a deeper understanding of the rule of law and the gravity of his actions. This approach allows Abate to make amends to society and demonstrate his commitment to respecting the law.

Furthermore, opting for probation in this case can be a powerful way to demonstrate the fairness and discretion of the criminal justice system. It can signal to the public that the courts differentiate between degrees of culpability and that the punishment imposed aligns with the actual conduct of the defendant. In doing so, the public receives a message that the justice system values individualized justice and recognizes the potential for redemption and rehabilitation, even in the aftermath of a grave event like the January 6 Capitol Attack.

D.   The need for the sentence to afford adequate deterrence

While it is understandable that the need for general deterrence is a significant concern in cases stemming from the violent riot at the Capitol on January 6, it is crucial to examine the broader implications of relying on incarceration as a means of deterrence. While incarceration may seem like an effective way to dissuade potential future rioters, it is essential to consider whether it truly addresses the underlying factors that lead an individual, like Abate, to engage in such behavior.

First and foremost, the assumption that severe sentences, such as incarceration, will deter future would-be rioters may not hold up under scrutiny. The deterrent effect of incarceration is

not always as straightforward as it may appear. Potential offenders often do not contemplate the potential consequences of their actions during the commission of a crime. Instead, their decisions are influenced by various factors, including their perceived grievances, emotions, and group dynamics. Therefore, the assumption that long prison sentences will automatically deter individuals with strong beliefs or grievances may be overly simplistic.

Moreover, while the argument that these individuals sought to disrupt the peaceful transfer of power is valid, it is equally essential to recognize that their actions have already faced widespread condemnation. The spectacle of the January 6 events, the arrests, and the ongoing trials have received extensive media coverage, sending a powerful message about the consequences of such actions. Additional incarceration for individuals like Abate may not necessarily enhance this deterrence, especially considering that the legal process itself, a criminal conviction, and probation serves as a deterrent.

Furthermore, specific deterrence, or the idea that a defendant must be incarcerated to prevent them from engaging in similar actions in the future, should be balanced with the potential for rehabilitation and reintegration into society. Abate genuinely regrets his participation and is open to changing his views through educational and rehabilitation programs. Incarceration fails to account for the potential for personal growth and transformation of Abate.

E.    Need To Avoid Disparity in Sentencing

Abate fully endorses and aligns with the overarching position presented by the Government in its Position on Sentencing in this case. It is imperative to recognize that Abate's circumstances and the particulars of his case set him apart from others currently before this Court. The most salient distinction lies in his status as an active-duty Marine at the time of the offense. It is worth noting that the examples of cases outlined by the Government all feature

elements that entail more severe facts than those found in Abate's case. These factors encompass the destruction of evidence, attempts to mislead investigators, live-streaming criminal activities, making inflammatory statements concurrently with the criminal acts, and actively promoting civil unrest.

As this esteemed Court is undoubtedly aware, the sentencing table provided in Footnote 3 of the Government's sentencing memorandum explicitly illustrates a broad range of potential sentences, spanning from a fine to up to 60 days incarceration. Given these considerations and considering the Government's recommendation, the pivotal determinant in the appropriateness of Abate's punishment lies in the weight the Court assigns to Abate's active military service at the time of the offense. Abate readily acknowledges that no similarly situated defendant has appeared before this Court. In comparison to others who engaged in analogous conduct, as elucidated in the sentencing table referenced in Footnote 3 of the Government's position, recent months have seen sentences of probation ranging from 6 to 36 months, accompanied by special conditions such as community service, and, in certain instances, home confinement.

Abate's unique circumstances, coupled with his demonstrated remorse and post-incident conduct, warrant thoughtful consideration from this Court in determining an equitable and just sentence that respects the principles of fairness and proportionality. As such, Abate is requesting that his Court sentence him in accordance with the recommendation from probation to a period of 6 months supervised probation and restitution.

## V.      DESIGNATION

Abate requests that if this Court imposes a term of incarceration in this matter that the Court recommend to the BOP that Abate be designated to an appropriate facility as close as possible to Warrenton, Virginia, since he has family and a support network residing in that area.

The Orange County Adult Detention Center is a facility contracted by BOP that falls within this area.   Alternatively, Abate requests that any term of imprisonment be limited to home confinement.

### VI.    CONCLUSION

In light of the unique circumstances surrounding Abate's case, we respectfully urge this Court to consider the sentencing factors outlined in § 3553(a) comprehensively. Abate's genuine remorse, impeccable post-incident conduct, and his unwavering commitment to rehabilitation and continued service to his country as an exemplary Marine, husband, father, and valued member of his community all underscore the appropriateness of a term of six months of supervised probation as an appropriate sentence with special conditions this Court deems appropriate.   Such a disposition would not only hold Abate accountable for his actions but also offer him the opportunity to rebuild his life, make amends, and contribute positively to society, while maintaining the principles of justice, fairness, and the pursuit of rehabilitation. Alternatively, if the Court deems a period of incarceration appropriate, Abate requests that this be served on home confinement or to perform additional community service in lieu of incarceration.

September 4, 2023                                     Respectfully submitted,

*/s/ David J. Dischley*
David J. Dischley
*Counsel for Joshua Abate*
9255 Center Street, Suite 300B
Manassas, VA 20110
Phone:   (703) 635-2424
Fax: (800) 689-9509
david@dischleylaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2023, I will electronically file the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send notification of such filing (NEF) to the following:

Joseph H. Huynh
D.C. Bar No. 495403
Assistant United States Attorney (Detailed)
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401-2708
Telephone: (541) 465-6771
Joseph.Huynh@usdoj.gov

*/s/ David J. Dischley*
David J. Dischley
*Counsel for Joshua Abate*
9255 Center Street, Suite 300B
Manassas, VA 20110
Phone:   (703) 635-2424
Fax: (800) 689-9509
david@dischleylaw.com

12